UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MALIK JUWAN COLE, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN RON NEAL, et al., <br><br> Defendants. | CAUSE NO. 3:22-CV-373-JD-MGG |

OPINION AND ORDER

Malik Juwan Cole, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 7.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Cole is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Cole is an inmate at Wabash Valley Correctional Facility. His complaint pertains to events occurring while he was incarcerated at Indiana State Prison ("ISP"). He alleges that when he woke up on October 23, 2020, he was feeling ill with severe

body aches, coughing, and vomiting. He was later taken to the medical unit by correctional staff "after vomiting all day." He was seen by Nurse Jackie Monaco, who examined him and then contacted Dr. Nancy Marthakis to relay his symptoms. He claims Nurse Monaco asked Dr. Marthakis to conduct her own examination, but the doctor allegedly refused to examine him or order any diagnostic testing. Instead, the doctor allegedly told Nurse Monaco to tell him that it was "probably something [he] ate." The doctor allegedly had him sent back to his cell without treatment.

He continued to feel ill, and on October 25, 2020, was taken back to the medical unit by correctional staff due to severe coughing and repeated vomiting. He claims he was dehydrated after being unable to eat or drink anything. He was seen by Nurse Deanna Laughlin, who took his vital signs but did not give him any treatment or refer him to a doctor. She told him "she didn't think it was COVID but could be the flu." She then sent him back to his cell.

The following day, he claims he was having a "medical emergency" in his cell as he had not been able to eat or drink for nearly four days. He was still vomiting and could not urinate or defecate. He claims correctional staff found him on the floor in a "puddle of vomit, unable to move." He told them he needed medical attention. They in turn contacted the officer in charge, Lieutenant Gordon-Ball (first name unknown), but she told them to leave him where he was and not to call an emergency signal. They followed her orders and did not get him any medical treatment.

It can be discerned that some correctional officers (he does not say who) took him to the medical unit later that day, where he was seen by Nurse Tiffany (last name

unknown). He claims she was aware that he had been previously seen for coughing and vomiting days earlier. He claims at that point he could not stand without assistance, his breathing was labored, and his clothing was "drenched in sweat and vomit[]." He claims she was angry that he could not fill out a medical request form, called him a "fucking baby," and told him he was "wasting [her] time" because there was "nothing wrong with [him]." The correctional officers allegedly told her, "We just had to pick him off the floor and carry him over here! Look at him, he can't even stop throwing up." She allegedly responded, "Welcome to prison," and had him sent back to his cell.

The following day, Nurse Deena (last name unknown) was passing out medication in his unit. He claims he tried to stop her to tell her he needed medical attention, but she ignored him and continued walking. He claims at that point he was still vomiting, was coughing up blood, and could not move because he was so weak. Other inmates in the area began yelling that there was a medical emergency. Sometime later, Nurse Deena returned with a correctional officer. When they went in his cell and saw him, the officer immediately got on his radio and called for back-up. Several officers arrived and their plan was to carry him to the medical unit, but Nurse Deena told them not to because they were "understaffed" and could not "do anything for him."

The following day, he was taken to an outside hospital after his mother called the prison to complain about his need for medical care. It was determined that he had pneumonia, an "acute kidney injury," and was severely dehydrated. He claims he had lost almost ten pounds since his illness began. Based on these events, he sues Lieutenant

Gordon-Ball, Dr. Marthakis, Nurse Tiffany, Nurse Laughlin, and Nurse Deena, as well as Warden Ron Neal and Wexford of Indiana ("Wexford"), the corporation which at that time employed medical staff at ISP. He seeks compensatory and punitive damages.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Mr. Cole the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Lieutenant Gordon-Ball, Dr. Marthakis, Nurse Tiffany, Nurse Laughlin, and Nurse Deena. He alleges that he was experiencing severe, visible symptoms—and was in fact suffering from pneumonia and a kidney

4

injury—but these defendants allegedly turned a blind eye to his medical concerns. Although Lieutenant Gordon-Ball is not a member of the medical staff, he claims that she stood in the way of his obtaining care even though he was experiencing severe symptoms. He will be permitted to proceed past the pleading stage against these defendants.

As for the Warden, liability under 42 U.S.C. § 1983 is based on personal responsibility, and he cannot be held liable for the actions of medical staff or subordinate correctional employees simply because he oversees operations at the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Supervisory prison staff can be held liable for a constitutional violation only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019).

There is no factual content in the amended complaint to suggest that the Warden was personally involved in these events, or that he condoned or facilitated the decisions of other staff not to provide Mr. Cole with medical care. Although Mr. Cole states that his mother contacted the prison "administration," the court cannot plausibly infer from this that she spoke directly to the Warden. As stated, the Warden cannot be held liable for the actions of other prison employees simply because he is the top official at the prison. *Burks*, 555 F.3d at 595. Furthermore, the amended complaint makes clear that

5

after the phone calls from Mr. Cole's mother, he was taken to an outside hospital for treatment. Warden Neal will be dismissed as a defendant.[1]

He also names Wexford, which previously employed medical staff at Indiana prisons. Wexford's contract with Indiana Department of Correction terminated in July 2021 and it was replaced by Centurion Health ("Centurion"). *See Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021). Wexford could be held liable for constitutional violations occurring during the time it provided medical care at Indiana prisons. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employed medical staff at ISP. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can be held sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and

---

[1] He may also be trying to hold the Warden liable for unduly dirty conditions at the prison, such as mice, birds, and bugs, but he does not include any allegations to plausibly link his pneumonia and kidney injury to dirty conditions at the prison. Without such allegations, the court does not find a claim about unsanitary conditions sufficiently related to his denial of medical care claim to proceed in the same lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against unrelated defendants belong in different lawsuits); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) (directing district courts to ensure that prisoners are not permitted to lump unrelated claims against unrelated defendants together in one lawsuit so as to avoid the provisions of the Prison Litigation Reform Act). This opinion does not preclude him from bringing a claim about pest infestation or other conditions of his confinement in a new lawsuit should he choose to do so.

other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

Mr. Cole alleges in general terms that Wexford had a policy of trying "less expensive alternatives before more expensive treatments." (ECF 7 at 12.) Consideration of the cost of treatment options by medical personnel does not necessarily violate the Eighth Amendment. *See Johnson*, 433 F.3d at 1001 ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care."). But more importantly, there is no factual content in the amended complaint to plausibly suggest that Mr. Cole was injured by an official cost-cutting policy. Instead he claims that the defendants failed to provide him with *any* care, not that they tried less expensive options that proved ineffective. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury"). He also has not included any allegations about other instances of cost-cutting to plausibly suggest that there was an actual custom or policy at play, rather than isolated wrongdoing by certain individuals. *See Howell*, 987 F.3d at 654; *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, then, a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.") This corporate defendant will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Lieutenant Gordon-Ball (first name unknown), Dr. Nancy Marthakis, Nurse Tiffany (last name unknown), Nurse

Deanna Laughlin, and Nurse Deena (last name unknown) for denying him medical care for pneumonia and an acute kidney injury in October 2020 in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden Ron Neal and Wexford of Indiana as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Gordon-Ball (first name unknown) at the Indiana Department of Correction and to send her a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis, Nurse Tiffany (last name unknown), Nurse Deanna Laughlin, and Nurse Deena (last name unknown) at Centurion Health and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(7) ORDERS Lieutenant Gordon-Ball (first name unknown), Dr. Nancy Marthakis, Nurse Tiffany (last name unknown), Nurse Deanna Laughlin, and Nurse Deena (last name unknown) to respond, as provided in the Federal Rules of Civil

Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 30, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT